UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:17-cr-00111 |
| v. | : | Judge Thomas M. Rose |
| DENNIS OLINGER, | : | |
| Defendant. | : | |

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (DOC. 24)**

This case is before the Court on the Motion for Compassionate Release (Doc. 24) (the "Motion"), filed by Dennis Olinger ("Olinger"). Olinger is currently incarcerated at Berlin FCI [Federal Correctional Institution] in New Hampshire. Olinger's appointed counsel filed a Supplement in support of the Motion. (Doc. 29.) Olinger asks the Court to (1) reduce his sentence to eliminate the period of his incarceration, or (2) convert the entire remaining sentence to house arrest. (*See* Doc. 29 at PAGEID # 73.) The United States of America (the "Government") filed a Response to the Motion (Doc. 30) (the "Response"), in which the Government opposes the Motion and asks the Court to deny it on several grounds. Olinger then filed a reply in support of the Motion. (Doc. 31.) The matter is ripe for review.[1] For the reasons discussed below, the Court

---

[1] Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted); *United States v. Ruffin*, 978

1

**DENIES** Olinger's Motion.

I.     **BACKGROUND**

On July 13, 2017, the Government filed a single-count Information against Olinger in this case, charging him with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Doc. 11.) The Information alleged that Olinger knowingly and intentionally possessed with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. (*Id.*)

On September 12, 2017, pursuant to a plea agreement, Olinger pleaded guilty to the offense in the Information. (*See* Docs. 14, 15, 16, 18.) The Statement of Facts attached to the Plea Agreement, signed by Olinger and his attorney, states:

> On or about June 21, 2017, in Preble County, Ohio, defendant Dennis Olinger knowingly and intentionally possessed with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Around that time, Mr. Olinger, along with Haley Bigelow, acquired in the western United States multiple kilograms of methamphetamine that they loaded into a car. Mr. Olinger and Bigelow then drove this car, along with the contraband hidden inside of it, to southern Ohio. Upon returning to this state, Mr. Olinger intended to sell these kilograms of methamphetamine to other drug dealers in the Dayton metro area.
>
> For the information of the Court, methamphetamine is a Schedule II controlled substance.

(Doc. 14 at PAGEID # 30.)

The Final Presentence Investigation Report ("PSI") regarding Olinger provided additional information about the circumstances of the offense, and it identified approximately eleven prior adult criminal convictions and numerous other minor convictions. (PSI ¶¶ 37-49.) Olinger's

---

F.3d 1000, 1004 (6th Cir. 2020) ("defendants now may bring reduction-of-sentence motions on their own once they exhaust any administrative remedies or wait 30 days from the date they request relief from the Bureau of Prisons"). Here, Olinger initially sent a request to the warden asking that compassionate release be sought on his behalf, and the warden denied that request. (Doc. 31-1 at PAGEID # 90-92.) Olinger waited more than 30 days after his request to the warden before filing the Motion (*id.*). *Alam*, 960 F.3d at 833-34; *Ruffin*, 978 F.3d at 1004.

extensive criminal history spans nearly two decades. (*Id.*) It includes that he was convicted of assault in 1996, after he was arrested for assaulting a person and shooting at that person's truck. (*Id.* at ¶ 39.) It also includes that he was convicted of conspiracy to possess with intent to distribute and distribute cocaine in 1999, when he had assisted in the transportation of approximately 37 kilograms of cocaine from Southern Florida to Dayton. (*Id.* at ¶ 45.) For that conviction, Olinger was sentenced to 121 months imprisonment, during which time Olinger was cited numerous times for improper conduct while incarcerated. (*Id.*) He was released in 2004 on a 5-year term of supervised release, but was convicted in 2005 for possession of cocaine in an amount of over 25 grams but less than 100 grams. (*Id.* at ¶¶ 45-46.) For that conviction, Olinger was sentenced to three years imprisonment, during which time Olinger was once again cited numerous times for improper conduct while incarcerated. (*Id.* at ¶ 46.) He was released in 2010 on a 5-year term of post release control, but—less than a month later—officers with the Ohio Adult Parole Authority located marijuana, digital scales, and other drug paraphernalia during a home visit. (*Id.*) As a result, Olinger was sanctioned and sentenced to 180 days in prison, but he reoffended on several other occasions while on post release control. (*Id.*)

Additionally, the PSI indicated that Olinger admitted to smoking marijuana frequently except during periods of incarceration and that he has a drug problem. (*Id.* at ¶¶ 46, 72.) The PSI also indicated that Olinger accepted responsibility for his actions in the crime for which he pleaded guilty in this case. (*Id.* at ¶ 18.)

This Court imposed a 120-month term of incarceration, five years of supervised release with special conditions, and a $100 special assessment. (Doc. 21.) Olinger is currently 43 years old and has an anticipated release date of March 18, 2026. *See* https://www.bop.gov/inmateloc. Olinger stated in the Supplement that he had already served "nearly three and one-half years of his

3

ten years of imprisonment as sentenced." (Doc. 29 at PAGEID # 67.)

## II. ANALYSIS

### A. Legal Standards

A district court has limited authority to modify a sentence. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020) ("[s]ince the Sentencing Reform Act of 1984, federal law has generally prohibited a district court from modifying a term of imprisonment once it has been imposed") (alterations adopted) (internal quotation marks omitted). "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[2]

The decision regarding whether to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A) involves a three-step test. *United States v. Jones*, 2020 WL 6817488, at *1, 2020 U.S. App. LEXIS 36620 (6th Cir. Nov. 20, 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i); *Ruffin*, 978 F.3d at 1004 (the statute identifies "three substantive requirements for granting relief"). At step one, a court must find whether extraordinary and compelling reasons warrant a sentence

---

[2] Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.

reduction.³  *Jones*, 2020 WL 6817488, at *6.  At step two, a court must find whether such a reduction is consistent with <u>applicable</u> policy statements issued by the Sentencing Commission. *Id.*  At step three, a court must consider any applicable Section 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case.  *Id.*

Regarding the first step, "Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'"  *Ruffin*, 978 F.3d at 1004.  "In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission the responsibility of describing what should be considered extraordinary and compelling reasons for sentencing reduction, including the criteria to be applied and a list of specific examples by promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A)."  *Jones*, 2020 WL 6817488, at *7 (alterations adopted) (internal quotation marks omitted).  The Sentencing Commission's policy statement on compassionate release under 18 U.S.C. § 3582(c)(1)(A) resides in § 1B1.13 of the United States Sentencing Commission Guidelines Manual.  *Id.* at *6-7; U.S.S.G. § 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)").  However, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018." *Jones*, 2020 WL 6817488, at *7.  Therefore, and for reasons more fully explained in *Jones*, the Sixth Circuit recently held that—until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act—district courts "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13" in cases where an incarcerated person files a motion for compassionate release.⁴  *Id.* at *7-9 ("[u]ntil the Sentencing Commission updates §

---

³ "Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii)."  *Jones*, 2020 WL 6817488, at *6 n. 12.
⁴ Congress did instruct that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t).  Additionally, "the Commission's analysis can guide discretion without

5

1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion").

Regarding the second step, again, the Sentencing Commission's policy statement on compassionate release under 18 U.S.C. § 3582(c)(1)(A) resides in U.S.S.G. § 1B1.13. *Jones*, 2020 WL 6817488, at *6-7. However, the Sixth Circuit recently held in *Jones* that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.* at *7. Thus, U.S.S.G. § 1B1.13 currently is <u>not</u> an "applicable policy statement[] issued by the Sentencing Commission" in such cases. 18 U.S.C. § 3582(c)(1)(A); *Jones*, 2020 WL 6817488, at *1, 7. So now, "where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry," at least until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act. *Jones*, 2020 WL 6817488, at *9.

Regarding the third step, "[d]istrict courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 2020 WL 6817488, at *11. The factors set forth in Section 3553(a) "consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public." *Ruffin*, 978 F.3d at 1005. More specifically, 18 U.S.C. § 3553(a) states:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

being conclusive" regarding what are extraordinary and compelling reasons to reduce a sentence. *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *2, 2020 U.S. App. LEXIS 36612, at *5 (7th Cir. Nov. 20, 2020).

(2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], are in effect on the date the defendant is sentenced; or

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], is in effect on the date the defendant is sentenced[;]

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.  *Jones*, 2020 WL 6817488, at *12; *Ruffin*, 978 F.3d at 1008-09.  Of course, not all of these items will be applicable or relevant (or known to the court) in all cases, and other items may be applicable or relevant.  *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable").

Finally, "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."  *Jones*, 2020 WL 6817488, at *5; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Ruffin*, 978 F.3d at 1005 (a "district court has substantial discretion" in deciding whether to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A)); *United States v. Keefer*, No. 19-4148, 2020

8

WL 6112795, at *3, 2020 U.S. App. LEXIS 32723 (6th Cir. Oct. 16, 2020) ("The statute's plain text makes evident the discretionary nature of a compassionate-release decision," and "the statute lists factors that, when present, *permit* a district court to reduce a sentence") (emphasis in original). However, district courts must "supply specific factual reasons for their compassionate release decisions." *Jones*, 2020 WL 6817488, at *1.

B. **Application**

Olinger asks that the Court grant the Motion and "issue an order either reducing his sentence to eliminate the remaining period of his incarceration in BOP or converting the entire remaining sentence to House Arrest Electronic Monitoring with work privileges." (Doc. 29 at PAGEID # 73.)  In the Motion, Olinger states that he is seeking compassionate release "due to the COVID 19 epidemic" and asserts that "[a]s of now my only medical conditions are high blood pressure, and over weight [sic]." (Doc. 24 at PAGEID # 57.)  In both the Motion and Supplement, Olinger argues that the death of his oldest son's mother presents an extraordinary and compelling reason for the requested sentence reduction.  (*Id.*; Doc. 29 at PAGEID # 67, 69-70.)  Although Olinger admits that he "committed a serious offense," he argues that he has "accepted responsibility for his criminal conduct" and that his "record also suggests that he can be safely released into the community on home confinement." (Doc. 29 at PAGEID # 70.)  He also argues that he "has a clear conduct history while incarcerated through the BOP," he has completed the Non Residential Drug Abuse Program (and has taken numerous classes while incarcerated), and he "has a solid release plan." (*Id.* at PAGEID # 73; Doc. 24 at PAGEID # 58.)

In response, among other things, the Government argues that this Court lacks the authority to grant Olinger's request for home confinement and that Olinger has not demonstrated that compassionate release is warranted under Section 3582(c)(1)(A). (*See* Doc. 30.)  The Government argues that, "[w]hile Mr. Olinger's family situation arguably constitutes an 'extraordinary and

compelling' reason for a reduction in sentence," he represents a danger to the community "and the remaining section 3553(a) factors weigh against his release." (*Id.* at PAGEID # 80.) The Government points to Olinger's "lengthy criminal record, including two prior convictions for serious drug crimes," his poor performance while incarcerated, and the fact that he has served only a fraction of his sentence. (*Id.* at PAGEID # 81, 83-84.) The Government highlights that Olinger's initial federal case involved transporting "at least 37 kilograms of cocaine" and this federal case involved transporting "13 kilograms of methamphetamine"—the "types and quantities of drugs [that], standing alone, reveal that he is a danger to the community." (*Id.*)

    1. <u>Request to Serve the Remainder of His Sentence on Home Confinement</u>

Olinger's request that the Court convert his entire remaining sentence to House Arrest Electronic Monitoring with work privileges amounts to asking the Court to order a change in the place where his sentence will be served, from Berlin FCI to his home. The Court lacks the authority to grant such a request. It is the BOP that has the authority to determine the place of a defendant's confinement, not the courts. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment …"); *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1991) ("While a judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government … and is delegated to the Bureau of Prisons") (quoting *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984)); *United States v. Townsend*, 631 F. App'x 373, 378 (6th Cir. 2015) ("The BOP, not the court, is responsible for designating the place of a prisoner's imprisonment … [a]ccordingly, the district court did not err in concluding that it could not split [defendant's] mandatory sentence between a BOP facility and home confinement because that decision is solely confided to the BOP"); *see*

*also* 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except that ….) (emphasis added).

The CARES Act did not change this fact. CARES Act, Pub. L. No. 116-136, at Div. B., Title II, § 120003(b)(2); *United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at \*2, 2020 U.S. App. LEXIS 26427, at \*5 (6th Cir. Aug. 19, 2020) ("to the extent that [the defendant prisoner] sought relief under the CARES Act, the district court correctly held that the authority to grant home confinement remains solely with the Attorney General and the BOP").

2. Compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

The Court now turns to Olinger's request for compassionate release through reducing his term of imprisonment pursuant to Section 3582(c)(1)(A)(i). (*See* Doc. 29 at PAGEID # 67, 73.) Regarding step one, for the purposes of the Court's analysis, the Court will assume—without deciding—that Olinger's asserted family circumstances present extraordinary and compelling reasons for reducing the term of imprisonment. The Court emphasizes it has not actually found that any circumstance (separately or combined) alleged by Olinger qualifies as an "extraordinary and compelling reason[] [that] warrant[s] a reduction" of his sentence.[5] 18 U.S.C § 3582(c)(1)(A)(i). As shown herein, the Court need not actually conduct that analysis to decide the Motion. *See, e.g., Jones*, 2020 WL 6817488, at \*7 (affirming district court's decision, which had "assumed for the sake of argument that extraordinary and compelling reasons existed" to reduce

---

[5] The Court notes that, although Olinger asserts in the Supplement that the now-deceased biological mother of his oldest son was the child's "caregiver," Olinger does not provide evidentiary support for that assertion. (*See* Doc. 29 at PAGEID # 69.) In fact, it is the Court's understanding that the child had been removed from the mother's custody—and was in the custody of Olinger's aunt—prior to the mother's death. (*See* PSI at ¶ 65.) Olinger's Motion states that the child has been staying with Olinger's aunt since the mother's death, and Olinger filed the Motion more than two years after the mother passed away. (Doc. 24 at PAGEID # 57.) Regardless, the Court need not determine if the biological mother of Olinger's child was the "caregiver" of that child both because the Court has the discretion, pursuant to *Jones*, "to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13," and, more importantly, because the Motion fails under the third step in analyzing motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as shown below. *Jones*, 2020 WL 6817488, at \*7-9.

the defendant's term of imprisonment, proceeded to weigh several § 3553(a) factors, and then denied the motion for compassionate release).

Regarding step two, given that Olinger (an incarcerated person) filed the Motion, the Court "may skip"—and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 2020 WL 6817488, at *9.

However, that does not end the Court's inquiry. There is still the third step: consideration of any applicable Section 3553(a) factors and determination of whether, in the Court's discretion, the reduction is warranted in whole or in part under the particular circumstances of the case. *Jones*, 2020 WL 6817488, at *6; 18 U.S.C. § 3582(c)(1)(A)(i); *see also Ruffin*, 978 F.3d at 1005 ("[e]ven if [the first two requirements] are met, … a district court may still deny relief if it finds that the applicable § 3553(a) factors do not justify it") (internal quotation marks omitted); *Keefer*, 2020 WL 6112795, at *6 ("[e]ven if [the defendant's] health condition is 'extraordinary and compelling,' the district court retained discretion to conclude that [the defendant's] individual circumstances did not warrant a sentence reduction").

The Court has considered the Section 3553(a) factors to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). This includes that the Court considered Olinger's history and characteristics, such as his asserted behavior in prison, rehabilitation efforts, and educational or vocational training while incarcerated. *See* 18 U.S.C. § 3553(a)(1). The Court disagrees with Olinger's argument that he "has a clear conduct history while incarcerated through the BOP." (Doc. 29 at PAGEID # 73.) The PSI belies that claim, at least with respect to his full incarceration history. (PSI at ¶ 45.) The Court also considered that Olinger accepted responsibility for his actions. And, the Court acknowledges the challenging conditions in prisons during the current

12

COVID-19 pandemic and Olinger's asserted health issues. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(D).

Yet, the "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1). The offense for which Olinger is currently incarcerated was a serious offense (as Olinger acknowledges), involving significant quantities of a dangerous controlled substance. (Doc. 14 at PAGEID # 30; PSI at ¶ 14; Doc. 29 at PAGEID # 70.) Additionally, Olinger's earlier crime of conspiracy to possess with intent to distribute and distribute cocaine in 1999 likewise involved significant quantities of a controlled substance (*see* PSI at ¶ 45). *See United States v. Jenkins-Mills*, No. 3:17-cr-25, 2020 WL 6146418, at *5, 2020 U.S. Dist. LEXIS 194652, at *10-12 (S.D. Ohio Oct. 20, 2020) (denying motion for compassionate release where Section 3553(a) factors weighed against reducing defendant's term of incarceration given his prior criminal drug convictions and that he still had approximately half of his sentence remaining for his current conviction for crimes involving relatively large quantities of methamphetamine). Also, Olinger's criminal history is extensive, and he has previously violated post-incarceration conditions. (PSI at ¶¶ 37-49.) The Court disagrees with Olinger's argument that his record "suggests that he can be safely released into the community on home confinement." (Doc. 29 at PAGEID # 70.) His record actually suggests the opposite. All of this greatly concerns the Court and weighs strongly against reducing the term of imprisonment. *See* 18 U.S.C. §3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(6).

Accordingly, the Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant do not favor early release. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). Furthermore, Olinger still has a substantial

amount of his sentence remaining. *See* 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B), (a)(6); *Ruffin*, 978 F.3d at 1008 (considering the amount of the sentence that the petitioner had served); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate"). Releasing Olinger with so much time remaining on his sentence "minimizes both the impact of [his] crime and seriousness of [his] offense." *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Having considered the factors set forth in section 3553(a) to the extent that they are applicable, the Court finds that the requested reduction of his term of imprisonment is not warranted.

In summary, even if steps one and two authorized the requested reduction, the Court finds that consideration of the applicable Section 3553(a) factors warrants denial of the Motion. *Jones*, 2020 WL 6817488, at *2 (affirming decision to deny motion for compassionate release where "the district court found for the sake of argument that an extraordinary and compelling circumstance existed in [defendant's] case but that the § 3553(a) factors counseled against granting compassionate release"); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (affirming denial of a compassionate release motion where "the District Court reasonably concluded that several of the § 3553(a) factors—including … the need to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence—counsel against compassionate release …").

### III. <u>CONCLUSION</u>

The Court is sorry to hear of the passing of Olinger's eldest son's biological mother and that the son is encountering a difficult period in his life, the Court commends Olinger's apparent

efforts to better himself while incarcerated (*see, e.g.,* Doc. 24 at PAGEID # 58), and the Court is sympathetic to Olinger's arguments about the fear of contracting COVID-19. However, the circumstances here do not warrant a reduction in Olinger's term of imprisonment pursuant to Section 3582(c)(1)(A). For the reasons stated above, the Court **DENIES** the Motion for Compassionate Release (Doc. 24).

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, December 8, 2020.

s/Thomas M. Rose

———————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE